IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | : |
| | :     Chapter 7 |
| KAINOS PARTNERS HOLDING | : |
| COMPANY, LLC, *et al.*, | : Case No. 09-12292 (BLS) |
| | : |
|     Debtors. | : |
| | : |
| ROBERTA A. DEANGELIS, | : |
| UNITED STATES TRUSTEE FOR REGION 3, | : |
| | : |
|     Appellant, | : |
| | : |
| v. | : Civil Action No. 10-560-LPS |
| | : |
| OFFICIAL COMMITTEE OF UNSECURED | : |
| CREDITORS[1] AND KAINOS PARTNERS | : |
| HOLDING COMPANY, LLC, | : |
| | : |
|     Appellees. | : |

## MEMORANDUM ORDER

At Wilmington this 30th day of November, 2012, having reviewed the Appeal filed by

Roberta A. DeAngelis, Acting United States Trustee for Region 3 (the "UST" or "Appellant"), of

the Bankruptcy Court's order dated and entered April 1, 2010 granting the joint motion of the

Committee and the Debtors pursuant to 11 U.S.C. § 105(a) and Federal Rule of Bankruptcy

---

[1]On July 6, 2009, appellee Kainos Partners Holding Company LLC and eighty-nine of its
affiliated debtors (collectively, "Kainos" or the "Debtors") filed with the United States
Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") their respective
voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the
"Bankruptcy Code"). On June 22, 2010, after commencement of the above-captioned appeal (the
"Appeal") on April 15, 2010 (D.I. 1), the Bankruptcy Court entered an order converting the
Debtors' Chapter 11 bankruptcy cases to cases under Chapter 7 of Title 11 of the Bankruptcy
Code. (*See* D.I. 10 at 2) Although the Official Committee of Unsecured Creditors (the
"Committee") was named as an appellee in this Appeal, upon the conversion of these cases the
Committee ceased to exist. (*See id.* at 2-3; D.I. 18 at 1)

Procedure 9019 for an order approving the global settlement (the "Global Settlement") between

and among the Committee, the Debtors, Dunkin' Brands, Inc., Dunkin' Donuts Franchising, Inc.,

DBI Stores LLC, Dunkin' Donuts Franchised Restaurants, LLC, CIT Group/Equipment

Financing, Inc., Kainos Investment Partners I, LLC, Kainos Investment Partners II, LLC, and

PCEP II KPHC Holdings, Inc. (the "Settlement Order") (D.I. 14, App. at 297-99), and the papers

filed in connection therewith;

IT IS ORDERED that the Appeal (D.I. 1; D.I. 2) is DISMISSED, for the reasons discussed

below.

1.      Relevant Background.[2] No plan of reorganization was filed while the Debtors

were in Chapter 11. Instead, the Debtors, their secured lenders, and the Committee ultimately

negotiated and entered into the Global Settlement to effectuate a purchase and sale of substantially

all of the Debtors' assets. The Global Settlement included, *inter alia*, certain payments and

mutual releases. (*See* D.I. 14, App. at 89, 103, 160)

2.      In connection with the Global Settlement, the parties' final Asset Purchase

Agreement (the "APA") included the following negotiated "Carve-Out" provision:

> Section 6.21 Carve-Out. If Buyer is the successful bidder
> for one or more stores in the Case and the Official Committee of
> Unsecured Creditors (the "Committee") supports the transaction,
> Dunkin' Brands, Inc. will at Closing assign to the Seller's estate for
> the benefit of (i) non-lender general unsecured creditors and (ii)
> unpaid fees and expenses of Committee professionals in excess of
> $125,000, its right to repayment of $250,000 of the CML Subsidy
> Loans and CML Subsidy Loan Obligations (as such terms are
> defined in that certain Amended and Restated DIP Financing,

---

[2]The Court presumes the parties' extensive familiarity with the background of this case.
A few salient facts, however, have been set forth above for ease of reference.

2

> Ratification and Intercreditor Agreement dated as of July 2009 (the "DIP Agreement") by and among Seller, the Lenders and the other parties thereto, as amended and in effect) (the "Carve-Out").  If Buyer is the successful bidder for one or more stores, Dunkin Brands, Inc. will also: (i) waive its right to repayment of the remaining $238,693 of the CML Subsidy Loans and CML Subsidy Loan Obligations; (ii) waive its right to repayment of obligations under the DIP Agreement, including but not limited to, the Dunkin' Debt (as defined therein); (iii) release the Seller from any obligations with respect to the pre-petition mortgages granted to Dunkin' Brands, Inc.; and (iv) waive its right to assert any claim against the Purchase Price, the Carve-Out and/or the Excluded Assets.

(D.I. 14, App. at 144-45)

3.      The Debtors submitted the terms of the APA to the Bankruptcy Court for approval. Over the UST's objection, the Bankruptcy Court approved the APA.  The Bankruptcy Court rejected the UST's argument that using the above-referenced $250,000 payment for the sole benefit of the Committee professionals and general unsecured creditors violated the statutory priority scheme; the UST argued that unpaid administrative claimants and priority unsecured creditors enjoyed a right to those proceeds that was superior to that of the general unsecured creditors. (*See* D.I. 14, App. at 192, 297)  The Bankruptcy Court found that the $250,000 was a payment by the secured creditors in exchange for resolving potential claims and causes of action of the estate against the Debtors' secured lender. (*See id.*, App. at 282-91, Mar. 31, 2010 Hr'g Tr.; *id.* at 290 ("While there is a distribution that is being made through the transfer of the secured creditors' collateral for the benefit of unsecured creditors, again, I find that the record does reflect that there are substantial benefits achieved by administrative creditors by virtue of the settlement."))

3

4.      No stay of the Settlement Order pending appeal was sought or obtained by the UST. (*See* D.I. 18 at 25; *see generally* D.I. 14; D.I. 21)

5.      <u>Parties' Contentions</u>. The UST appeals the Settlement Order on the ground that the Bankruptcy Court erred as a matter of law in approving the Global Settlement, regardless of any perceived benefit to the estate. (*See* D.I. 14) The UST contends that the distribution of the sale proceeds approved by the Bankruptcy Court violate the Bankruptcy Code's comprehensive priority scheme. (*See id.*) The UST argues that it does not seek to reverse either the sale of estate assets or the Settlement Agreement but instead only asks the Court to vacate the "Carve-Out" or "Earmark Provision," i.e., that portion of the settlement agreement directing the estate to use the designated funds solely to pay the Committee's lawyers and financial advisors and the general unsecured creditors. (*See* D.I. 14 at 9; D.I. 21) The UST requests that the $250,000 assigned to the estate for the benefit of general unsecured creditors and Committee professionals be returned to the bankruptcy estate for distribution by the Chapter 7 Trustee.[3] (*See* D.I. 14; D.I. 21)

6.      The appellee is Randy A. Skinner, Esq., (hereinafter the "Kainos GUC Trustee" or "Appellee"), the trustee appointed to administer the Kainos General Unsecured Trust (the "Kainos GUC Trust"). The Kainos GUC Trust was established by the Committee and the Debtors in furtherance of their settlement agreement. Appellee contends that, with respect to the $250,000 in settlement payments directed to general unsecured creditors (and their professionals): (i) the *res* of the Kainos GUC Trust is not comprised of estate assets but from a carve-out from the secured creditors' collateral, and (ii) payment of the *res* to the Kainos GUC Trust in no way violates the

---

[3]After the sale of their assets, the Debtors converted their Chapter 11 cases to liquidation cases under Chapter 7. Charles M. Forman, the Chapter 7 trustee (the "Chapter 7 Trustee") for the Debtors, supports the UST's Appeal. (*See* D.I. 19)

4

Bankruptcy Code's statutory priority scheme. (*See* D.I. 18 at 1-3; *see also id.* Ex. B) Appellee additionally contends this appeal should be dismissed as equitably moot because Appellant never sought a stay of the Bankruptcy Court's Settlement Order and, accordingly, the Kainos GUC Trustee has been proceeding to carry out his duties to the beneficiaries of the Kainos GUC Trust. (*See id.* at 23-26)[4]

7. Standard of Review. This Court has jurisdiction to entertain an appeal from the Bankruptcy Court pursuant to 28 U.S.C. § 158(a).[5] In undertaking a review of the issues on appeal, the Court applies a clearly erroneous standard to the Bankruptcy Court's findings of fact and a plenary standard to its legal conclusions. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999); *see also In re Hechinger Inv. Co. of Del., Inc.*, 489 F.3d 568, 573 (3d Cir. 2007) ("Our review of the District Court's decision effectively amounts to review of the bankruptcy court's opinion in the first instance, because our standard of review is the same as that exercised by the District Court over the decision of the Bankruptcy Court," and, accordingly, "review[ing] the Bankruptcy Court's findings of fact for clear error and exercis[ing] plenary review over questions of law") (internal quotation marks and citations omitted). The Court must "break down mixed questions of law and fact, applying the appropriate standard to each component." *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992).

8. Discussion. "The doctrine of equitable mootness provides that an appeal should be dismissed as moot when, even though effective relief could conceivably be fashioned,

[4]In particular, as of the filing of his brief in May 2011, Appellee intended to distribute the $250,000 in or around June 2011. (D.I. 18 at 23)

[5]The Court's jurisdiction over this matter is not in dispute. (*See* D.I. 14 at 1; D.I. 18 at 1)

5

implementation of that relief would be inequitable." *SemCrude, L.P. v. Manchester Sec. Corp.*

*("SemCrude")*, 456 F. Appx. 167, 169 (3d Cir. Jan. 3, 2012) (internal quotation marks omitted),

*aff'g Manchester Sec. Corp. v. Semcrude, L.P. (In re Semcrude, L.P.)* (*"Manchester"*), 2011 WL

675033, at \*2 (D. Del. Feb. 18, 2011); *see also In re Continental Airlines ("Continental II")*, 203

F.3d 203, 209 (3d Cir. 2000). The determination of whether an appeal is equitably moot requires

a "discretionary balancing of equitable and prudential factors." *In re Continental Airlines*

*("Continental I")*, 91 F.3d 553, 560 (3d Cir. 1996) (*en banc*). Specifically, the Court of Appeals

for the Third Circuit has recognized five factors that courts should consider in evaluating whether

an appeal should be dismissed under the doctrine of equitable mootness:

> (1) whether the reorganized plan has been substantially
> consummated; (2) whether a stay has been obtained; (3) whether the
> relief requested would affect the rights of parties not before the
> Court; (4) whether the relief requested would affect the success of
> the plan; and (5) the public policy of affording finality of
> bankruptcy judgments.

*Id.*

9.     Applying these factors here, the Court concludes that the UST's appeal is equitably

moot. The Global Settlement was approved by the Bankruptcy Court and its implementation was

not stayed. "The existence or absence of a stay is a critical factor in determining whether to

dismiss an appeal under the doctrine of equitable mootness." *Kuntz v. Saul, Ewing, Remick &*

*Saul (In re Grand Union Co.)*, 200 B.R. 101, 105 (D. Del. 1996); *see also, e.g., In re*

*Northwestern Corp.*, 2009 WL 2399120, at \*2 (D. Del. Aug. 4, 2009) (affirming settlement order

and remarking: "Appellant never requested a stay of the Settlement Order. The settlement was a

complex and integrated resolution of the many claims involving the parties, and the Court is not

6

persuaded that relief can be granted to Appellant without causing adverse consequences to numerous parties, including general unsecured creditors not before the Court who are still awaiting distributions under the Plan, and whose distributions would be further delayed if the settlement were unwound. Accordingly, in these circumstances, the Court concludes that the Appellant's appeal is equitably moot."). In the absence of a stay, it appears that the terms of the settlement have been substantially consummated.[6] (*See* D.I. 18) The UST's requested relief would impact numerous third parties not before the Court, namely Kainos' unsecured creditors, and would affect the success of the Global Settlement. The public policy of affording finality to bankruptcy judgments also weighs in favor of dismissal. Here, given the "complexity of the litigation" (D.I. 14, App. at 289); the number of parties involved in the negotiation, approval, and implementation of the Global Settlement; and the Bankruptcy Court's not-clearly-erroneous finding that "in the absence of the settlement that triggers the sale process, that triggered the support of a [$]500,000 DIP to keep the process going . . . all parties would have suffered a catastrophic loss" (*id.* at 269), public policy favors leaving the Settlement Order undisturbed. Here, "even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable." *Continental I*, 91 F.3d at 558-59 (internal quotation marks omitted). Accordingly, the Court finds this appeal to be equitably moot and will dismiss it.[7]

---

[6]*See* 11 U.S.C. § 1101(2) (defining "substantial consummation" as "(A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan").

[7]Given the overall equities and other factors cited here, the Court reaches its conclusion of mootness even assuming the UST is correct that the $250,000 is protected by a bond or is otherwise retrievable by the estate even after distribution. (*See* D.I. 21 at 9-10)

7

10.     In the alternative, even if the Court were to reach the merits of this Appeal, the Court would agree with the Bankruptcy Court that the Global Settlement does not violate the Bankruptcy Code's statutory priority scheme but, instead, satisfies the criteria for approval under Bankruptcy Rule 9019 and the standards set forth under *In re Martin*, 91 F.3d 389, 393 (3d Cir.1996). As the Bankruptcy Court observed, the settlement payments slated for distribution to general unsecured creditors and their professionals arise from a carve-out from the secured creditors' collateral. (*See* D.I. 14, App. at 282-91, Mar. 31, 2010 Hr'g Tr.)

Accordingly, this Appeal is DISMISSED.

UNITED STATES DISTRICT JUDGE

8